UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OWEN MUKIIBI KIWANA,<br><br>                         Petitioner,<br><br>v.<br><br>CHRISTOPHER G. LAROSE, in his official capacity as Warden of CCA Detention facility, DANIEL BRIGHTMAN, in his official capacity as Field Office Director of the Immigration & Customs Enforcement and Removal Operations San Diego Field Office; KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>                         Respondents. | Case No.: 3:25-cv-3678-JES-SBC<br><br>**ORDER:**<br><br>**(1) GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; AND**<br><br>**(2) DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER.**<br><br>**[ECF Nos. 1, 2]** |

      Before the Court is Petitioner Owen Mukiibi Kiwana's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and Motion for a Temporary Restraining Order. ECF No. 1, ("Pet."); ECF No. 2, ("TRO"). Pursuant to the Court's Order to Show Cause (ECF No. 3.), Respondents filed a Response. ECF No. 5, ("Res."). Thereafter, the Court took the matter under submission. For the reasons set forth below,

the Court **GRANTS** the Petition for Writ of Habeas Corpus, and **DENIES AS MOOT** the Motion for Temporary Restraining Order.

## I. BACKGROUND

Petitioner is a Ugandan national and citizen that is currently detained in the Otay Mesa Detention Center. Pet. ¶ 1. In 1985, Petitioner came to the United States and, soon after, became a lawful permanent resident. ECF No. 5-1, Declaration of Marielle Ceja ("Ceja Decl.") ¶ 6. In November 2009, after he was convicted of an aggravated felony, Petitioner was detained by Immigration and Customs Enforcement ("ICE") and removal proceedings were initiated against him. *Id*. ¶ 7; Pet. ¶ 2. On June 29, 2010, Petitioner was ordered removed by an Immigration Judge ("IJ"). ECF No. 5-2 at 8, ("IJ Ord."). In that same proceeding, the IJ also denied Petitioner's withholding of removal claim but granted his application for deferral of removal under Article III of the Convention Against Torture. *Id*.

On July 28, 2010, Petitioner was released from immigration custody on an Order of Supervision. Ceja Decl. ¶ 10. For the following fifteen years, Petitioner regularly attended his scheduled ICE check-in appointments in accordance with the Order of Supervision. Pet. ¶ 4. However, on September 17, 2025, Petitioner failed to report for a scheduled check-in appointment with ICE. Ceja Decl. ¶ 11. On November 3, 2025, ICE revoked Petitioner's release and re-detained him. *See* Ex. 3. That same day, Petitioner was provided with a Notice of Revocation of Release ("Notice") and was also afforded an informal interview the same day. *See* ECF No. 5-2 at 13, ("Not."); *Id*. at 16.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal

law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

Habeas corpus is "perhaps the most important writ known to the constitutional law ... affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

### III.   DISCUSSION

Petitioner seeks habeas and injunctive relief from the Court arguing that his re-detention violates the Due Process Clause of the Fifth Amendment. In the Response to the Petition, Respondents raise two arguments as to why the Petition should be denied. First, Petitioner's claim is jurisdictionally barred by 8 U.S.C. § ("Section") 1252. Res. at 3-4. Second, Petitioner is lawfully detained under Section 1231(a), and the time for which he has currently been detained, comports with *Zadvydas*. *Id.* at 4-10.

**A.   Jurisdiction**

The arguments regarding the Court's jurisdiction are identical to those recently addressed by the undersigned in *Saengphet v. Noem, et al.*, No. 25-cv-2909-JES-BLM, 2025 WL 3240808, at *2-3 (S.D. Cal. Nov. 20, 2025). The Court, therefore, adopts its reasoning as to this issue and incorporates it by reference. *See also Martinez Lopez v. Noem et al.*, No. 25-cv-2717-JES-AHG, 2025 WL 3030457, at *2-3 (S.D. Cal. Oct. 30, 2025) (holding same).

//

Accordingly, the Court finds that 8 U.S.C. § 1252's jurisdiction stripping provisions do not bar this Court from considering Petitioner's habeas petition. Thus, the Court has jurisdiction to hear this Petition.

### B.  Respondents' Regulatory Noncompliance Violates Due Process

The issues presented in this case have recently been addressed by several district courts in this Circuit and across the nation. This Court, along with many others, have overwhelmingly arrived at these two holdings. First, a DHS Notice that fails to provide petitioner with adequate notice of the reasons why their release was revoked, violates federal regulations. *See Saengphet*, 2025 WL 3240808, at *3-8; *see also Sarail A. v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2533673, at *10 (D. Minn. 2025) ("Simply to say that circumstances had changed or there was a significant likelihood of removal in the foreseeable future is not enough. Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition."); *M.S.L. v. Bostock*, No. 6:25-cv-01204-AA, 2025 WL 2430267, at *4, 10–11 (D. Or. Aug. 21, 2025); *Hashemi v. Noem*, --- F.Supp.3d ----, 2025 WL 3468694, at *5 (C.D. Cal. 2025). This substantially prejudices petitioner from meaningfully responding to the reasons stated in the Notice, when challenging their detention in the informal interview. *See Saengphet*, 2025 WL 3240808, at *7; *McSweeney v. Warden of Otay Mesa Det. Facility*, No. 25-cv-02488-RBM-DEB, 2025 WL 2998376, at *6 (S.D. Cal. Oct. 24, 2025); *Vo v. Wofford*, No. 25-CV-01530-JLT-SKO (HC), 2025 WL 3718823, at *4 (E.D. Cal. Dec. 22, 2025).

Second, the Government lacks regulatory authority to revoke a noncitizen's release, and violates its own regulations, when it is unable to show sufficient evidence that a determination took place before, or at, the time it re-detained petitioner, based on changed circumstances, which justified the revocation of petitioner's release. *See Saengphet*, 2025 WL 3240808, at *4-7; *see also Rokhfirooz v. Larose*, --- F.Supp.3d ----, 2025 WL 2646165, at *3 (S.D. Cal. 2025); *Tran v. Noem*, No. 3:25-CV-02391-BTM-BLM, 2025 WL 3005347,

at * 2 (S.D. Cal. Oct. 27, 2025). The Court, therefore, adopts its prior reasoning stated in *Saengphet*, with respect to these holdings, by reference.

The Government contends that Petitioner's detention is lawful because 8 C.F.R. § 241.13 authorized it to revoke his release as it determined, based on "changed circumstances" that it stated in the Notice, there was a "significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R § 241.13(i)(2); *see* Notice; Ceja Decl. ¶ 12. The Court disagrees and finds that the Government violated its own regulations when it revoked Petitioner's release because it failed to: (1) provide Petitioner with a Notice that adequately informed him of the reasons his release was revoked; (2) show sufficient evidence that prior to, or at the time of Petitioner's re-detention, a determination based on changed circumstances took place which justified the revocation of Petitioner's release; and (3) provide Petitioner with a meaningful opportunity to contest his detention, when it conducted the informal interview on the same day it provided him the Notice. Respondents' conduct violated Petitioner's due process rights.

### 1. Lack of Adequate Notice

The Notice Respondents provided to Petitioner is wholly conclusory as it fails to sufficiently inform Petitioner why his release was revoked. *See Sarail*, 2025 WL 2533673, at *10. This is evidenced by the Notice's general reference to Petitioner's alien file and removal order but failure to state any specific facts that constitute changed circumstances in support of ICE's determination that there is "significant likelihood that the alien may be removed in the reasonably foreseeable future." *See* 8 C.F.R § 241.13(i)(2); *see* Not. The Court acknowledges that Respondents' second proffered changed circumstance is a specific fact about Petitioner's conduct, while on he was on supervised release. *See* Ceja Decl. ¶ 12; *see also* Not. However, there are no accompanying facts or information that explain why or how this fact constitutes a violation of the conditions of Petitioner's release or even affects Respondents' ability to remove Petitioner in the reasonably foreseeable future.

The regulatory scheme permits a noncitizen an opportunity to contest their re-detention, in the informal interview. *See* 8 C.F.R § 241.13(3). But to do so successfully, Petitioner must adequately "respond to the reasons for revocation stated in the [Notice]." *Id*. When a noncitizen is not informed of the reasons for which they were re-detained, it is essentially impossible for them to adequately respond to them and secure their own freedom. *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978) ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending hearing."); *see also McSweeney*, 2025 WL 2998376, at *6 ("Petitioner could not have meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons.").

Here, the Notice lacked any details and/or specific facts to sufficiently inform Petitioner of the reasons for which Respondents revoked his release, as required by their own regulations. Therefore, the Court finds that the Government violated 8 C.F.R § 241.13(3).

### 2. Lack of Regulatory Authority

The Notice fails to establish, and the Government has failed to produce any evidence of its pre-detention determination which relied on, any changed circumstances that would make it significantly likely that Petitioner may be removed in the reasonably foreseeable future. 8 C.F.R § 241.13(i)(2); *see* Not. Thus, the Government lacked the regulatory authority to revoke Petitioner's release when it did so.

In the Notice, Respondents proffered two changed circumstances that support "ICE's determination that Petitioner can be expeditiously removed from the United States": (1) the unexecuted order of removal; and (2) Petitioner's failure to report to a scheduled check-in appointment. Ceja Decl. ¶ 12; *see* Not. The Court addresses each in turn.

#### a. Respondents' First Proffered Changed Circumstance

On June 29, 2010, Petitioner was ordered removed to Uganda. IJ Ord. Both Petitioner and DHS waived their right to appeal. *Id*. Therefore, the June 2010 decision is a final order of removal. *See Id*.; *Garcia v. Lynch*, 786 F.3d 789, 798 (9th Cir. 2015). This

means that Petitioner's final order of removal has been in place for the last fifteen years. *See* IJ Ord. Said another way, Respondents' ability to deport Petitioner, pursuant to his removal order, has remained unchanged since 2010. *See Id*. Thus, the Court finds that Petitioner's "unexecuted order of removal" cannot possibly be construed as a changed circumstance for purposes of 8 C.F.R. § 241.13(i)(2). Ceja Decl. ¶ 12.

### b. Respondents' Second Proffered Changed Circumstance

The Court struggles to understand how Respondents' second proffered changed circumstance supports ICE's determination that there is "significant likelihood that the alien may be removed in the reasonably foreseeable future." *See Id*.; *see also* Not.; 8 C.F.R § 241.13(i)(2). This fact would certainly justify revocation of Petitioner's release for violating a condition of his release, if attending every scheduled check-in appointment was a condition of his release. *See* 8 C.F.R § 241.13(i)(1). However, the Government's revocation of Petitioner's release is not based on that ground. *See* Not. It should also be noted that the Court was not provided a copy of Petitioner's order of supervised release. Therefore, it is unable to determine whether Petitioner's missed check-in violated a condition of his supervised release.

Nevertheless, in its Response, the Government makes clear that its intent is to remove Petitioner to a third country. *See* Res. at 7-8; Ceja Decl. ¶¶ 14-15. However, on this record, the Court is unable to ascertain the logical and/or legal relevance of Petitioner missing a scheduled ICE check-in and Respondent's ability to remove Petitioner to a third county in the reasonably foreseeable future.

Petitioner's deferral of removal status prevents him from being deported to Uganda, until and unless his deferral of removal is terminated. *See* 8 C.F.R. § 1208.17; IJ Ord. An individual's deferral of removal can only be terminated through either the Government's

//
//
//
//

successful undertaking of a lengthy re-litigation process[1] or the occurrence of one of two highly unlikely events.[2] *See* 8 C.F.R. §§ 1208.17(d)-(f). None of which, in the Court's view, is likely to be successfully carried out within the reasonably foreseeable future. Therefore, at this time, Respondents' only available means to deport Petitioner is removal to a third country. *See* 8 U.S.C. § 1231(b)(2)(E)(vii); 8 C.F.R. § 1208.17.

In its Response, the Government outlined the internal and external processes involved with removing a noncitizen to a third country. *See* Res. at 7-8; *see also* Ceja Decl. ¶ 15. However, conspicuously absent from the Response, and more importantly from the Notice, is an explanation of how this missed check-in, increased the success rate of this arduous process, specifically for Petitioner, in the reasonably foreseeable future. *See* Not.; *see generally* Res. Without this or any additional information, the Court cannot find that "Petitioner's failure to report to a scheduled check-in appointment" as a changed circumstance for purposes of 8 C.F.R. § 241.13(i)(2). Ceja Decl. ¶ 12.

8 C.F.R. § 241.13(i)(2) "requires that [DHS's] determination is made before the removable alien has had his release revoked." *Tran*, 2025 WL 3005347, at *2; *see also Sphabmixay v. Noem*, No. 25CV2648-LL-VET, 2025 WL 3034071, at *2 (S.D. Cal. Oct. 30, 2025). Even if Respondents made a determination on the likelihood of Petitioner's removal before revoking his release, the Court concludes that it would not have been made on account of change circumstances, let alone those stated in the Notice. This conclusion is based on two findings.

First, the Government avers that Petitioner's September 17, 2025, conduct, constitutes changed circumstances. Ceja Decl. ¶¶ 11-12. Despite this assertion, it waited

---

[1] Deferral of removal can be terminated if the Government obtained a favorable "*de novo* determination, based on the record of proceeding and initial application in addition to any new evidence." 8 C.F.R. § 1208.17(d); Such a determination is subject to appeal by either party. *Id.*

[2] Deferral of removal can also be terminated when requested by Petitioner. *Id.* § 1208.17(e). Or if diplomatic assurances against torture were obtained by the Secretary of State from the country of which removal to is being deferred *Id.* § 1208.17(f).

*forty-seven days* after this incident occurred—and for Petitioner to voluntarily report to ICE—to re-detain him. *See* ECF No. 5-2 at 4.

Second, the Court previously established that currently, the only permissible avenue for the Government to deport Petitioner is removal to a third country. Which from the Government's briefing, appears will likely take a significant amount time to accomplish. *See* Res. at 7-8. And despite its knowledge of this, the Government did not take any action to identify a third country that is willing to accept Petitioner, when he missed his check-in. Rather, it waited nearly sixty days, and until after he was re-detained, to even submit an internal request to identify such a country.

The Government's inaction for such a lengthy span of time since the occurrence of the proffered "changed circumstance" cuts against the reasonable likelihood that it was relied upon by DHS when it made its determination. Further, Respondents provide no evidence of an actual determination of changed circumstances that justified the revocation of Petitioner's release. *See generally* Res. Thus, the Court finds that Respondents' proffered justifications stated in the Notice fail to satisfy the regulatory criteria, as set forth in 8 C.F.R § 241.13(2)

Accordingly, the Court holds that the Government failed to comply with its own regulations when it revoked Petitioner's release—and therefore, lacked the legal authority to do so. *See Saengphet*, 2025 WL 3240808, at *5; *see also Rokhfirooz*, 2025 WL 2646165, at *3; *see also Tran*, 2025 WL 3005347, at *2.

### 3. Lack of a Meaningful Opportunity to be Heard

The Court finds that the Government violated its regulations when it conducted Petitioner's informal interview on the same day that it issued him the defective Notice. *See* ECF No. 5-2 at 13-16. Doing so under the imposed time constraints, deprived Petitioner of a meaningful opportunity to contest his detention, which violated his due process rights. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

"[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*,

533 U.S. at 679. "The interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi*, 542 U.S. at 529; *see United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention ... is the carefully limited exception."); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207 (2022) ("An individual's private interest in freedom from prolonged detention is unquestionably substantial.") (citations omitted). A person at risk of a suffering a serious loss being given notice and an opportunity to be heard, in a meaningful manner and at a meaningful time, is the essence of procedural due process. *Mathews*, 424 U.S. at 335.

Federal regulations require that after a noncitizen is re-detained, and are provided with a Notice, the Government will "promptly" conduct their informal interview. *See* 8 C.F.R § 241.13(i)(3). During this interview, the noncitizen has an opportunity to contest their detention by adequately responding to the stated reasons in the Notice. *Id.* To overcome the Notice's stated justifications, "[t]he [noncitizen] may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." *Id.*

Government agencies are required to follow their own regulations. *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003). Courts have found that when the Government fails to follow its own regulations when revoking release, the detention is unlawful, and the petitioner's release must be ordered. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 169-170 (W.D.N.Y. 2025); *Rombot v. Souza*, 296 F. Supp. 3d 383, 387 (D. Mass. 2017); *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025); *Truong v. Noem et al.*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025).

Here, Petitioner was re-detained on November 3, 2025, at 12:30 p.m. ECF No. 5-2 at 3. And on that same day, Respondents not only provided Petitioner with his Notice, but also conducted his informal interview. *Id.* at 13-16.

  The Court acknowledges that the regulations require the informal interview to take place "promptly" after a noncitizen is re-detained. 8 C.F.R § 241.13(3). However, when the informal interview is conducted on the same day that the Notice is issued, the Government essentially bars the noncitizen from being able to submit any evidence or information that may show that the revocation of their release is unlawful. *See id*. This conduct directly violates 8 C.F.R § 241.13(3).

  Unfortunately, Petitioner's circumstances were even worst. He was subjected to an extremely brief timeline and was forced to blindly contest his detention because his Notice was defective, as it lacked sufficient detail and/or facts. *See supra,* at III-A-1. This resulted in substantial prejudice to Petitioner, who was deprived of an "opportunity to be heard, in a meaningful manner and at a meaningful time." *Mathews*, 424 U.S. at 335.

  The Court, therefore, finds that the Government failed to provide Petitioner a meaningful opportunity to contest his detention, as required by its regulation. *Id.*; 8 C.F.R § 241.13(i)(3). Which in turn, violated his Fifth Amendment Due Process rights. *See Bonitto v. Bureau of Immigr. & Customs Enf't*, 547 F. Supp. 2d 747 (S.D. Tex. 2008) (finding that 8 C.F.R. § 241.13 reflects the *Zadvydas* Court's concerns and "provide necessary procedural safeguards to ensure the detention of an alien beyond the removal period comports with due process requirements. Because these regulations confer important rights upon aliens ordered removed, DHS is bound by these regulations.").

  C. *Zadvydas* **Claim and Temporary Restraining Order**

  Having ruled on the Petition, on the merits, the Court declines to address Petitioner's *Zadvydas* arguments or apply the *Winter* factors to determine whether to issue a TRO. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Court, therefore, **DENIES AS MOOT** the Motion for Temporary Restraining Order.

### IV. CONCLUSION

  In sum, the Government failed to follow its own regulations when it failed to: (1) provide Petitioner with adequate notice of the reasons why his release was revoked, substantially prejudicing him from meaningfully challenging his detention in the informal

interview; and (2) show sufficient evidence that prior to, or at the time of Petitioner's re-detention, a determination based on changed circumstances took place which justified the revocation of Petitioner's release; and (3) provide Petitioner with a meaningful opportunity to contest his detention, when it conducted the informal interview on the same day that it provided him the Notice. The Government's noncompliance resulted in a violation of Petitioner's due process rights. Accordingly, Petitioner's habeas Petition is **GRANTED** and Petitioner is ordered **RELEASED**.

Based on the foregoing:

(1) The Court **GRANTS** the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241;

(2) As Petitioner's sought after relief was **GRANTED**, the Court **DENIES AS MOOT** the Motion for Temporary Restraining Order;

(4) Respondents are **ORDERED** to immediately **RELEASE** Petitioner from custody, under the same conditions as previously imposed, and to **FILE** a Notice of Compliance, no later than **January 19, 2026,** confirming that Petitioner has been released;

(5) In the event Petitioner seeks further habeas relief arising from the Government's conduct related to its future execution of his removal order, Petitioner must **FILE** a new Petition; and

(6) The Clerk of Court is **DIRECTED** to **CLOSE** this suit upon receipt of Respondents' Notice of Compliance.

**IT IS SO ORDERED.**

Dated: January 14, 2026

Honorable James E. Simmons Jr.
United States District Judge